## THE STATE v. CHARLES E. McWILLIAMS.

### Division Two, March 31, 1916.

1. **INFORMATION: Sufficiency: Embezzlement.** Where the statute sets out the specific facts constituting the crime, as does Sec. 4550, R. S. 1909, concerning embezzlement, an information based thereon which is definitively descriptive of the offense as defined therein, is sufficient.

2. ————: ————: ————: **Intent.** Where the embezzlement consists of doing the act itself, that is, where it consists of the fraudulent conversion of money by one to whom it has been intrusted, the information need not allege the intent with which the act was done, since the criminal intent will be inferred from the fraudulent conversion.

3. ————: **Former Jeopardy: Based on Assumption.** A defendant cannot be put in peril by being placed upon his trial under an invalid amended information upon the assumption that a valid information was then pending undisposed of. To constitute former jeopardy there must have been a valid information or indictment charging the same offense, and in a proceeding under that valid information or indictment a jury must have been impaneled and sworn for defendant's trial.

4. ————: ————: Amended Information: Quashed: Former Restored. An information, in one count, charging defendant with embezzlement, was filed in one county, and after the case was transferred to another county the prosecuting attorney of the first filed an amended information in two counts, the first charging embezzlement of money, and the second embezzlement of a check, and a jury was impaneled and sworn and the trial proceeded, but before a verdict was rendered the court, of its own motion, quashed the amended information and ordered defendant to be held for trial under the original information. *Held*, that by being put upon his trial on the amended information defendant was not, because of its invalidity, put in jeopardy under the original valid information.

5. CONTINUANCE: Contradictory and Insincere Application. An application for a continuance, which is inconsistent, contradictory, does not import the truth as to defendant's knowledge of what the absent witness would testify and does not show reasonable diligence, should be denied.

6. ————: Diligence: Deposition. Where the application states that the defendant had sent to the absent witness money with which to pay her traveling expenses from another State to the place of trial and that she had agreed to attend, the trial court would be justified in granting a continuance, if the allegation therein of defendant's recent knowledge of what her testimony would be bears the impress of truth; but if the facts reveal that he did know what her testimony would be, then proper diligence required him to take her deposition, and having failed to do that the trial court did not abuse its discretion in denying the application.

7. EMBEZZLEMENT: Agency of Loan Agent. Where the borrower called at defendant's office to employ him to secure a loan of $3400, and gave him a note for $127.50 for his services in that behalf, and in addition signed an order directed to the loan company in which he requested that the proceeds of the loan be paid to defendant and in which he said he thereby appointed defendant his agent to settle with the company for said loan, and the loan company, after deducting its own commission, sent a check payable to defendant for the balance, the defendant was the agent of the borrower, in all that was necessary to establish the relation of agency, in a prosecution for having embezzled the proceeds of the check.

8. ————: ————: Circumstances. Circumstances arising out of a transaction, even in establishing the fact that defendant, charged with embezzlement, was the borrower's agent, are sometimes as strong in probative force as sworn testimony.

9. ————: Ownership of Check. Where the loan company contracted to loan $3400 to a farmer, to be evidenced by his note,

which was to be secured by a deed of trust on his land, and upon the receipt of the note and deed of trust executed by him caused the deed of trust to be recorded, and forwarded a check for the amount of the note less commission, payable to defendant, the agent who had negotiated the loan, the company parted with the title to the check, and the nominal ownership passed to defendant; and it thereafter became his duty to either indorse it to the farmer, or convert it into cash and pay the proceeds to him, or apply it to the discharge of a prior lien for which the money had been borrowed; but as it was indorsed and placed to defendant's credit in the bank, his act became embezzlement of the money when he drew it out and without the farmer's consent converted it to his own use.

10. ————: **Felonious Intent: Concealment.** A defendant's felonious intent, in a charge of embezzling his principal's money, is to be measured by his acts; and it may be shown by his evasion of his principal, a concealment from him of the fact that he has received the money, and a neglect or refusal to account for it.

11. ————: ————: **Use of Money.** Where defendant is charged with embezzling money, in that he as the agent of a farmer undertook to borrow for him a sum of money to be used in paying off a farm mortgage, and when the check for the loan was sent to him it was deposited to his own credit in a bank and drawn out for his own personal uses, it is not error to permit an officer of the loan company to testify that defendant had not used the money in paying off the prior lien on the land, nor returned it to the company.

12. ————: ————: **Depositing Check.** Nor under such circumstances is it error to permit the State to show that the check payable to defendant's order and received by him was indorsed and deposited to his credit in a bank, and later checked out by him.

13. ————: ————: **Other Loans.** Where the defendant was the agent of the borrower in a particular case and was authorized to receive the proceeds of the loan from a certain company, whatever relationship he may have sustained to that company in previous or subsequent like transactions can have no bearing upon the issue of whether he embezzled the money received by him in that case.

Appeal from Daviess Circuit Court.—*Hon. Fred Lamb, Judge.*

AFFIRMED.

*W. S. Herndon, R. H. Musser, John Leopard* and *Paul D. Kitt* for appellant.

(1) The court erred in overruling defendant's motion to quash the information. The information did not contain an essential element of the offense, viz., the intent. This information is based on the first subdivision of Sec. 4550, R. S. 1909. State v. Lentz, 184 Mo. 234; 15 Cyc. 491. When the intent with which an act is done is a necessary ingredient of the offense it must be alleged in the information. Kelley's Criminal Law & Practice (3 Ed.), sec. 199; State v. Haney, 130 Mo. App. 95; State v. Dowd, 95 Mo. 163; State v. McCollum, 44 Mo. 345; State v. Burke, 151 Mo. 136; 22 Cyc. 329; 15 Cyc. 513. (2) The court erred in overruling the demurrer to the evidence offered by defendant at the close of the State's evidence, and in overruling the demurrer offered by defendant at the close of all the evidence, and in refusing to give instruction number 1 requested by defendant, because: (a) In order to constitute embezzlement, as agent, as charged in the information, the accused must occupy the designated fiduciary relation and the money or property must belong to his principal, the one designated and named in the information, and come to the possession of the defendant by virtue of that relation. State v. Brown, 171 Mo. 480; Griffen v. State, 4 Tex. App. 390; State v. Myers, 68 Mo. 266; State v. Dodson, 72 Mo. 283; State v. Moreaux, 254 Mo. 406; Ex Parte Hedley, 31 Cal. 108. Appellant was not the agent, clerk, collector and servant of Gregor and did not receive this check or money as agent, etc., of Gregor; nor did the check or money come to him by virtue of his relation, if any, to Gregor, nor in the course of his employment, if any, by Gregor; it came to defendant by virtue of defendant's relation to Bartlett Brothers Land & Loan Company and as that company's agent or bailee. Day v.

Dages, 46 N. E. 589; Jensen v. Investment Co., 53 N. W. 179; Figley v. Bradshaw, 53 N. W. 148; McLean v. Ficke, 62 N. W. 753; Ins. Co. v. Jones, 27 Pac. 807; Gibson v. Davenport, 29 Ohio St. 309; Stockton v. Watson, 101 Fed. 490; Bowman v. Lickey, 86 Mo. App. 47; Savings Fund Society v. Bank, 36 Pa. St. 498, 78 Am. Dec. 390; Insurance Company v. Ives, 56 Ill. 402. The check or money in question did not belong to Gregor but belonged to Bartlett Brothers Land & Loan Company, or someone whom they represented; it had not been turned over unconditionally as Gregor's money; the title to the check and money still remained in Bartlett Brothers Land & Loan Company. State v. Cooper, 71 N. W. 197; Bowman v. Lickey, 86 Mo. App. 47; Guthrie v. Waite, 129 Mo. App. 587; Plow Co. v. Porter, 82 Mo. 23. (b) The check or money was not received by defendant as agent, clerk, collector or servant of Gregor, but it was received by him, as agent of Bartlett Brothers Land & Loan Company, or a bailee or trustee for a certain purpose, viz.: to apply as payment on the mortgage on Gregor's farm. State v. Castleton, 255 Mo. 201; State v. Myers, 68 Mo. 266; State v. Betz, 207 Mo. 589; 3 Ruling Case Law, sec. 2, p. 72; Sec. 4552, R. S. 1909. A bailment is defined to be a delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust. Watson v. State, 70 Ala. 13, 45 Am. Rep. 70; Story on Bailments (9 Ed.), sec. 2; 5 Cyc. 161-170; Railroad v. Railroad, 61 N. J. L. 287; 3 Am. & Eng. Ency. Law, 733; Knapp v. Knapp, 118 Mo. App. 685; Guthrie v. Waite, 129 Mo. App. 587. (c) If defendant was guilty of the offense of embezzlement it was not of money, but of the check sent him by Bartlett Brothers Land & Loan Company; if guilty of embezzlement at all he was guilty of wrongful conversion the moment he cashed the check and placed the money to his credit; this was contrary to

his instructions. State v. Castleton, 255 Mo. 210; State v. Schilb, 159 Mo. 142; State v. Mispagle, 207 Mo. 574; Sansberry v. State, 59 So. 340; State v. Crosswhite, 130 Mo. 355; State v. Salmon, 216 Mo. 522; Spaulding v. People, 172 Ill. 55; 2 Bishop's New Criminal Law, secs. 372-373-379. (3) The court erred in refusing to sustain the defendant's plea in bar and of former jeopardy. The State having admitted the facts stated in the plea in bar, to be true, it then became a question of law, on the facts stated, and was equivalent to a demurrer to the plea. State v. Anderson, 186 Mo. 25; State v. Wiseback, 139 Mo. 214. The facts set forth in the plea in bar, show that the defendant was in jeopardy, and that the plea should have been sustained. Article 5, Amendments Constitution United States; Cooley Const. Lim. (6 Ed.), 399; Secs. 22, 23, 28 and 30, article 2, Constitution Missouri; State v. Snyder, 98 Mo. 555; State v. Hays, 78 Mo. 605; State v. Webster, 206 Mo. 558; State v. Keating, 223 Mo. 86; State v. Wiseback, 139 Mo. 214. The act of the court in discharging the jury must be treated as an acquittal of the defendant. 12 Cyc. 261-270, and cases cited in Notes 85-86 and 87, p. 270; Kelley's Criminal Law and Practice (3 Ed.), sec. 229; State v. Webster, 206 Mo. 558; Cooley on Constitutional Limitations (7 Ed.), 467; State v. Webster, 206 Mo. 558. The court erred in overruling defendant's application for a continuance.

*John T. Barker,* Attorney-General, and *Shrader P. Howell,* Assistant Attorney-General, for the State.

(1) The information in this case is in an approved form and is sufficient in all respects. Sec. 4550, R. S. 1909; Kelley's Crim. L. & Pr., sec. 675; State v. Adams, 108 Mo. 211; State v. Mohr, 68 Mo. 303; State v. Lipscomb, 160 Mo. 131; State v. Shour, 196 Mo. 205. In charging the completed offense of embezzlement it is

unnecessary to further allege that such act was committed with the intent to deprive the owner of the property so converted. State v. Larew, 191 Mo. 199; State v. Cunningham, 154 Mo. 179; State v. Lentz, 184 Mo. 237; State v. Silva, 130 Mo. 463; State v. Martin, 230 Mo. 690; State v. Adams, 108 Mo. 214. (2) The plea of twice in jeopardy will not avail where the former trial was based upon an invalid information. State v. Keating, 223 Mo. 94; State v. Manning, 168 Mo. 429; State v. Owen, 78 Mo. 374; State v. Wilson, 39 Mo. App. 187; State v. Buente, 256 Mo. 241; Kelley's Crim. L. & Pr., sec. 229. In this case the trial had on the amended information was a nullity for the reason that the prosecuting attorney of Livingston County was without authority to file an amended information in the circuit court of Daviess County. State v. Bartlett, 170 Mo. 672; State v. Vinso, 171 Mo. 585; State v. Billings, 140 Mo. 204; State v. Blunt, 110 Mo. 337. Upon the quashing of the amended information the valid original information resumed its full force and effect. Sec. 5102, R. S. 1909; State v. Mayer, 209 Mo. 396; State v. Melvin, 166 Mo. 572; State v. Anderson, 96 Mo. 245; State v. Williams, 191 Mo. 212; State v. Vincent, 91 Mo. 665. (3) This court will not interfere with the finding of the trial court where the record on appeal shows substantial evidence to support the verdict returned. State v. Concelia, 250 Mo. 424. Under the facts of this case it is manifest that the defendant was constituted and recognized by all parties concerned as the agent of the borrower as charged in the information. May v. Ins. Co., 72 Mo. App. 290; Robinson v. Jarvis, 25 Mo. App. 427; County v. Goggin, 105 Mo. 191; Robinson v. Kreisel, 187 Mo. App. 55; Mortgage Co. v. People, 102 Ala. 245; Mortgage Co. v. King, 105 Ala. 392; Cooper v. Headley, 12 N. J. Eq. 48; Johnson v. Shattuck, 67 Ark. 159; Thomas v. Demsey, 57 Iowa, 58; Engleman v. Reuse, 61 Mich. 395.

The testimony submitted on the trial was amply sufficient to show that the defendant converted and embezzled the money as charged. State v. Wissing, 187 Mo. 106; State v. Laughlin, 180 Mo. 361; State v. Martin, 230 Mo. 697.

WALKER, J.—In November, 1913, appellant was charged in an information filed in the circuit court of Livingston County with embezzlement, under section 4550, Revised Statutes 1909. Upon a trial in the circuit court of Daviess County, to which the case had been transferred by change of venue, appellant was convicted and sentenced to four years' imprisonment in the penitentiary. The original information was in one count. Appellant moved to quash same on the general ground that it did not state facts sufficient to constitute a cause of action. This motion was by the court overruled. After the case had been transferred to the circuit court of Daviess County, in June, 1914, the prosecuting attorney of Livingston County filed in the circuit court of Daviess County an amended information charging the appellant with the same offense as in the original, but in two counts, one for the embezzlement of money and the other for the embezzlement of a check. On the day said amended information was filed, the appellant announcing ready for trial, a jury was sworn and impaneled and the trial proceeded, but before a verdict was rendered the court, on its own motion, stopped the proceedings and quashed the amended information and ordered that the appellant be held for trial on the original information. Thereafter, on December 10, 1914, appellant filed a plea in bar on the ground that having been put upon his trial on the amended information and a jury having been impaneled and sworn to try him, he had been put in jeopardy and hence should not again be required to answer for the same offense. This plea was overruled. Appellant then filed an application for a continuance on the

ground of the absence from the State of a stenographer who had formerly been in his employ, alleging that said witness, if present would testify that Greger had told appellant to use the money he had obtained from Bartlett Bros. until the second loan was obtained and pay him (Greger) interest on same. This motion was overruled, and appellant waived formal arraignment, entered a plea of not guilty and a jury was impaneled and sworn to try the cause. The trial progressed and on December 12, 1914, the jury returned a verdict finding the appellant guilty as stated, and from this judgment he appeals.

In the spring of 1913 Charles E. Greger owned a farm in Livingston County burdened with two deeds of trust, one for $3000 and the other for $1600. Both were held by Frank B. Caesar. The notes secured by these deeds of trust becoming due, the owner desired their payment. The appellant at the time was in the real estate and loan business in Chillicothe, and Greger approached him for the purpose of securing a loan to enable him to take up these notes and release his farm from the deeds of trust. The first conversation in regard thereto between appellant and Greger was in the latter part of March, 1913, and as a result of same Greger filled out, at appellant's direction, an application to Bartlett Bros. of St. Joseph for a loan of $3600. After some correspondence between Bartlett Bros. and the appellant, the former agreed to make the loan to the amount of $3400 on the Greger land, and on April 14, 1913, a note and deed of trust were executed by Greger to Bartlett Bros. for that amount and same were delivered to appellant to be forwarded to Bartlett Bros.; at the same time another note and deed of trust were executed for the sum of $1400, which sum of money was to be obtained from a source other than Bartlett Bros. When it had been ascertained that the money could be obtained from Bartlett Bros., Greger

made and delivered to the appellant, at the latter's request and direction, the following paper: "Utica, Mo., April 1, 1913. Bartlett Bros. Land and Loan Company, St. Joseph, Mo. Gentlemen: Please pay to Charles E. McWilliams or order the proceeds of my loan of $3400 negotiated by you for me. I hereby appoint said Charles E. McWilliams my agent to settle with you in full for said loan. Charles E. Greger."

On the completion of the abstract of title of the Greger land and its examination and approval by Bartlett Bros., on June 14, 1913, they forwarded to appellant their check, payable to him, for $3298, being the proceeds of the $3400 which they had agreed to loan Greger, less the commission. A few days prior to the forwarding of this check appellant had written Bartlett Bros. that he had completed the arrangements for the second loan, but it is further shown by the evidence that this had not been done, and that the second deed of trust was never recorded, nor was the note representing it ever negotiated. The check for $3298 sent by Bartlett Bros. to appellant was indorsed by a stenographer in his office and placed to his credit in the Peoples Savings Bank of Chillicothe. None of this money was ever paid to Greger, but all of it was checked out, either by the appellant or persons in his office authorized to check on his account, and in November preceding the trial the entire amount had been thus withdrawn from the bank, leaving only a balance of ninety-four cents. Nor was any of the proceeds of this check ever paid to Caesar, the owner of the two deeds of trust. Appellant never at any time disclosed to Greger that he had received the $3298 or any other amount of money from Bartlett Bros. by reason of the execution of the note for $3400 and deed of trust by Greger to said Bartlett Bros. to secure same. Upon the consummation of this loan by the delivery made by appellant to Bartlett Bros. of the note and deed of

trust for $3400 they at once placed the deed of trust upon record. Greger made frequent visits to appellant's office in Chillicothe after he had delivered the note and deed of trust to him, in an effort to ascertain whether he had received the money, but could not find him, although these visits were repeated at intervals from July, 1914, to the day of the trial, December 10, 1914. He says that during this time he was in California for his health. Appellant, on the witness stand, testified that a few days after the receipt of the money from Bartlett Bros. he told Greger the money had been received, but that he had not yet been able to negotiate the second loan for $1400. At that time appellant says Greger suggested that he would see the owner of the notes secured by deed of trust and endeavor to induce him to take the second loan. In the meantime appellant says he talked to Caesar and tried to get him to take the $3298 which had been received from Bartlett Bros. and apply it on the two notes aggregating $4600, but that Caesar had refused so to do. Appellant could not remember that Greger had ever given him a note in payment for his services in securing the loan. Shown a letter that he had addressed to Bartlett Bros. on June 13, 1914, in which he said, "We have been ready for a long time for our part of the deal and have the papers for the second loan on record and are awaiting your money," he admitted that the statement therein made was not true, but said when he wrote the letter he had the promise of the money to cover the second loan for $1400, and had given directions to some one in his office to have the deed of trust recorded and thought it had been done. He further admitted that the check received from Bartlett Bros. in the sum of $3298 had been deposited to his credit in the Peoples Savings Bank in Chillicothe and had been checked out, either by himself or some one in his office. When asked if it had been spent for his private benefit he answered

evasively but admitted that he had never paid the money to Greger, his excuse being that no demand had ever been made for it, that he had been gone several months and had not seen Greger during that time, that he had never paid the money to Bartlett Bros., and had never given Greger a slip of paper or anything else showing he had used it, and that this was his customary way of transacting business of this character. Caesar, who owned the first and second deeds of trust, denied that appellant had ever offered to pay him the $3298 which had been received by appellant from Bartlett Bros. or any other sum, or that appellant had offered to give him any additional security as an inducement for him to take a second mortgage.

The charging part of the original information is as follows:

"That Charles E. McWilliams on or about the 14th day of June, A. D. 1913, at said county of Livingston and State of Missouri, being then and there the agent of a certain private person, to-wit—of one Charles E. Greger, and the said Charles E. McWilliams, being then and there, not a person under the age of sixteen years, did then and there by virtue of his said employment as agent of the said Charles E. Greger, have, receive and take into his possession and under his care certain money to a large amount, to-wit, to the amount of thirty-four hundred dollars, lawful money of the United States and of the value of thirty-four hundred dollars, of the property and moneys belonging to the said Charles E. Greger, and the said Charles E. McWilliams the same money then and there feloniously did embezzle and fraudulently convert to his own use, without the assent of his employer, the said Charles E. Greger, the owner of said money; and the said Charles E. McWilliams, the said money, in manner and form aforesaid, feloniously did steal, take and carry away; against the peace and dignity of the State."

I. The information charges a statutory embezzlement under section 4550, Revised Statutes 1909. Its sufficiency is assailed generally. The well-established rule in regard to charging an offense based on a statute is that where the statute sets out' the specific facts constituting the crime, an information or indictment based thereon which is definitely descriptive of the offense, as defined by the statute, will be held sufficient. [State v. Perrigin, 258 Mo. l. c. 236.] The necessary constituent elements of the offense are set forth in the statute in the instant case and hence the information which embodies its language is not subject to valid objection. [State v. Moreaux, 254 Mo. l. c. 405; State v. Blakemore, 226 Mo. l. c. 574.]

Information.

In addition to the general objection urged by appellant to the information, it is contended that it does not allege a criminal intent.

The statute upon which this charge is based creates two offenses: one consisting of the doing of the act itself, and the other of doing certain things in regard to the subject-matter with the intent' to do the prohibited act. The information here is based upon the first offense denounced by the statute and charges the commission of the act itself and not the doing of something else with the intent to commit the act.

Embezzlement is the fraudulent conversion of another's property by one to whom it has been intrusted or into whose hands it has lawfully come; and when it has been embezzled or converted, within the meaning of the statute, it is not an improper inference that the act was intended by the perpetrator of same. While it is true that no one can be convicted of a felony in the absence of a criminal intent, such an intent in a case of embezzlement may be inferred from a felonious or fraudulent conversion and need not be alleged in the information or indictment. This ruling as to the suffi-

267 Mo. 29

ciency of a charge under the first class of offenses defined by the statute received the careful consideration of this court in State v. Lentz, 184 Mo. 223, in which it was held that it was not necessary to allege the intent with which the act charged was committed. This ruling was approved in State v. Larew, 191 Mo. l. c. 199.

II. Appellant interposes the plea of former jeopardy. This is not based upon the proceeding against him on the amended information, which he admits to have been a mere nullity, no other alternative remaining under our ruling in State v. Bart-

**Jeopardy.** lett, 170 Mo. l. c. 672. But he contends that while put upon his trial in the first instance on the amended information he was, in law, by reason of its invalidity, put in jeopardy under the original information, it being the only valid charge against him.

The fallacy of this contention becomes apparent upon an analysis of same. It bases the plea of jeopardy upon an assumption and not upon a fact. A defendant cannot thus be put in peril within the meaning of the Constitution. [Art. 2, sec. 23, Constitution.] It will not suffice to assume that because appellant could not be injured by the invalid proceeding that he must perforce have cause of complaint because there was pending against him in the same case a valid charge which he was not then required to answer. If the appellant was only required at the time the amended information was preferred against him to answer the charge therein—and no further demand could the State then make—under what rule of reason or law can it be said that he was answerable under the original information? It is true that it formed the foundation for the prosecution and gave the circuit court of Daviess County derivative jurisdiction of the case upon the perfecting of the change of venue, but this did not give it power while simply lying in the files

and undisposed of to operate as a charge against appellant because of the invalidity of the proceeding he was then being required to answer.

If the fallacy of appellant's contention be not sufficiently shown by the foregoing concrete reasons, let us see what light is thrown on the question by the authorities.

A rule well established here and elsewhere requires that before a plea of former jeopardy can be sustained these facts must be made to appear; that a valid charge either by indictment or information has theretofore been preferred against the accused in a court of competent jurisdiction charging him with the same offense of which he is on trial, and that in the former proceeding a legal jury was impaneled and sworn. [State v. Buente, 256 Mo. l. c. 239, and cases; State v. Keating, 223 Mo. l. c. 94; 12 Cyc. 261.] There are exceptions to this rule well stated in the Buente case, supra, p. 241, but not necessary to be considered here. Appellant was at no time before his arraignment and the trial which resulted in his conviction, required to answer, on a trial, a valid charge preferred against him. This is one of the essentials necessary under the rule stated. The amended information, as he admits, lacked the requisite of validity, for the reasons set forth in State v. Bartlett, supra. He was not arraigned upon or required to answer the original information when the proceeding of which he complains was pending against him, nor was a jury impaneled and sworn to try him on this charge. To hold, therefore, that it operated to his injury in the absence of these essentials would be in violation of precedent and contrary to reason.

No provision of our Bill of Rights was violated in the trial of appellant, nor was he entitled to be heard on the plea that the proceeding against him contravened the Fifth Amendment to the national Constitu-

tion; this, as has been repeatedly held, is applicable only to crimes against and trials under Federal laws. [Capital City Dairy Company v. Ohio, 183 U. S. 238; Thorington v. Montgomery, 147 U. S. 490; State v. Buente, supra; 12 Cyc. 259.] There is no merit in the plea in bar.

III. Appellant complains of the action of the trial court in refusing to grant him a continuance. The application was properly refused. It is inconsistent, if not contradictory, in alleging that the appellant had conferred with the witness by correspondence, knew what her testimony would be and sent her money to enable her to attend the trial, while at the same time alleging that he had only learned what her testimony would be during the last few days preceding the making of the application. Further than this, the allegation as to appellant's recent knowledge of the witness's testimony does not savor of sincerity. If true it is contrary to all human experience. He was charged with a felony. She was his employee when he received the check from Bartlett Bros., the cash proceeds of which he subsequently embezzled. She, as his evidently trusted employee, deposited this check to his credit in the bank. On account of her relation to his business requiring her daily attention thereto and his alleged frequent conversations with Greger, he must have known of her presence when he had these conversations concerning which it is stated she will testify. This testimony if true was vital to his defense and she was his most important witness. Yet, according to his statement, he did not know what she would testify until a few days prior to the making of the application. In addition, therefore, to the application in this respect lacking the import of truth, it does not show such diligence as must reasonably be expected will be exercised by a man of ordinary

*Continuance.*

intelligence under like circumstances. [State v. Pagels, 92 Mo. l. c. 308.]

No intendments are to be taken in favor of applications of this character (State v. Good, 132 Mo. l. c. 129); from its express allegations the conclusion is reasonable that appellant knew not only what the testimony of this witness would be but her whereabouts in ample time between the date of the filing of the information and the trial to have enabled him to take her deposition.

If the allegation as to appellant's then recent knowledge of the witness's testimony bore the impress of truth, which it does not, then the trial court would have been justified in granting the application, in view of the statement that he had sent her money to defray her traveling expenses to the place of trial and that she had agreed to attend; but under the facts as we view them a proper exercise of diligence required him to take her deposition. This being true, the overruling of the application, which was addressed to the sound discretion of the trial court, was not unwisely or oppressively exercised and we refuse to interfere with same. [State v. Cain, 247 Mo. l. c. 705; State v. Crane, 202 Mo. l. c. 74; State v. Clark, 170 Mo. 207.]

IV. The uncontroverted facts show that appellant was the agent of the borrower (Greger) in securing this loan. Greger testified that on the day he called at appellant's office to employ him to secure the loan he gave appellant a note, payable to the latter, for $127.50 for his services in that behalf. Further than this, the order given by Greger to appellant on Bartlett Bros. (set forth in full in the statement of facts), which was to be delivered to the latter in the event the loan was secured, expressly declared appellant to be Greger's agent. Appellant does not deny either the execution of this note or the delivery to him of the order, but contents him-

self with a resort to a lack of memory in regard to the first and silence as to the second. Forgetfulness and evasion have never been regarded as indicative of truth.

If it be conceded that appellant was the agent of the loan company at the beginning of the transaction this does not militate against the conclusion, supported by the facts stated, that he was the agent of the borrower to negotiate the loan and apply the proceeds thereof as had been directed; but the credibility of appellant's testimony as to his agency for the loan company, at any time, is shaken by the testimony of Peterson, a representative of the company, that up to the time the appellant made the application for Greger he was a stranger to the company and that even the formal blank used in this application was not procured by the appellant from the company's office. Subsequently this witness stated that appellant during the year 1913 negotiated four or five loans through the company, but this does not tend to show appellant's agency in the matter at bar or in the cases of which the witness testified.

Circumstances naturally arising out of a transaction are sometimes as strong in probative force as sworn testimony. This case affords an illustration of this fact. Appellant was not compensated for his services in securing this loan by the company, as he would naturally have been had he been its agent, but by Greger. When the note and deed of trust had been executed and delivered to the loan company it forwarded to appellant for Greger, not $3400, but a check for $3298, or $102 less than the face of the note, which latter sum it deducted and retained for its services in making the loan. While it is stated in one of the letters from the company to appellant that ''it will, when the loan has been completed, pay him his part of the commission,'' so far as the evidence discloses none of

the sum thus deducted or retained was ever claimed by
or paid to him, nor did the company ever compensate
him in any other manner.   The reasonable conclusion
from this fact is that he was not employed by the
company to negotiate the loan, but by Greger to ob-
tain it, and by the latter he had been fully paid.  It is
clear, however, whether he was paid by the company
or not, that in all that is necessary to constitute the
relation, he was the agent of the borrower.

The cases cited in respondent's brief under this
head, by reason of the similarity of their facts to those
in the instant case, sustain the conclusion we have
reached in regard to appellant's agency.

V. Appellant contends that the title to the check
forwarded by the Bartlett Bros. Loan Company to ap-
pellant, the cash proceeds of which were
Ownership
of Property.    to be paid to Greger or applied in part
satisfaction of certain prior liens on his
land, never left the company and at all times belonged
to it.   This contention is mystified by many words,
principally copied from the formal application made
by appellant to the company for Greger and the cor-
respondence between appellant and the company prior
to the making of the loan.   The relevant facts from
which ownership must be determined are that the com-
pany contracted to loan $3400 to Greger to be evidenced
by his note, which was to be secured by a deed of trust
on his land, and upon the receipt of such note and deed
of trust caused the latter to be recorded and forwarded
a check payable to appellant for the amount of the loan
less the company's commission.   Upon the acceptance
by the company of the note and the recording of the
deed of trust, the contract for the loan was consum-
mated, whereby the obligation of the company to pay
the amount called for in the note became fixed.   Upon
the transmittal, therefore, of the check to appellant
by the company it parted with the title to same and

the nominal ownership therein passed to the appellant who became burdened, upon the receipt of same, with the obligation to either indorse it to Greger, convert it into cash and pay the proceeds to him, or apply it to the discharge of the prior lien on Greger's land. He did neither, but indorsed same to a bank and had the amount called for therein placed to his credit. This created a technical appropriation, as the money realized from the check belonged to Greger, but until appellant indicated a purpose to do with this money as the thief does with the property of another in a case of larceny, such a felonious conversion did not occur as to create the crime of embezzlement. But when it did occur the crime was complete. Nor is it material as to the manner in which the money was drawn out if converted to appellant's own use. [State v. Woodward, 171 Mo. 593; State v. Moyer, 58 W. Va. 146, 6 Am. & Eng. Ann. Cas. 344.]

VI. Appellant's felonious intent is to be measured by his acts. According to the testimony, to which the jury gave credence, the sufficiency of which is ample to sustain the verdict, it is shown that appellant, when the loan had been secured, evaded Greger. He concealed the fact from him that the loan had been consummated and that he had received the check. He placed the same to his own credit in a bank and admits that he drew the money out for his own use and has not accounted for same.

Felonious Intent.

These facts sufficiently show a felonious intent on the part of the appellant, and his relation to Greger as an agent having been established, his act is clearly within the purview of that general rule that if one who has the possession of the property of another, instead of delivering it to the owner as his duty requires, neglects or refuses to account for it or otherwise diverts it so as to exercise dominion over it to the exclusion of the owner and to make it his own, he

is guilty of embezzlement. [State v. Lentz, 184 Mo. l. c. 239.]

VII. Appellant complains because the trial court permitted the State to show by the witness Peterson that the appellant had neither used the money received from Bartlett Bros. in paying off the prior liens nor had he returned the money to the loan company. The question at issue was whether or not the money so received by him had been applied as directed by Greger, and it was therefore pertinent for the State to show that the appellant had violated his directions as to the manner in which the loan should be applied.

*Rulings on Testimony.*

Further objection is made that the court erred in permitting the State to show that the check received by appellant from the loan company had been indorsed and deposited to his credit in a bank and had later been checked out by him. The check was made payable to appellant, and necessarily under the authority given him by Greger he could not commit the crime of embezzlement until after it had been indorsed and converted into money. If in the latter form he used it as directed, he was guiltless; on the other hand if he used the money for purposes other than to pay it to Greger or to discharge the prior liens, he was guilty as charged. It is manifest, therefore, that the court's ruling in this respect was not erroneous. Moreover, appellant admitted on the witness stand that the check had been received and deposited and the money drawn out of the bank by himself or others authorized to do so and that he had used the same for personal purposes. Therefore, whether the action of the trial court in permitting a witness to state the condition of the bank was erroneous is immaterial, as the evidence given by such witness was in accord with that given by the appellant himself. Harmless error will not work a reversal.

Appellant also urged that the court erred in refusing to permit the witness Peterson to state the number of applications appellant had submitted to the loan company during the year 1913. This witness did state that appellant had forwarded to his company possibly half a dozen applications for loans during that time. Presumably, from the witness's former testimony, these were made subsequent to procuring the loan for Greger. But even if the court had refused to permit the witness to answer the question it would not have been error. The matter at issue was whether the appellant had embezzled the money represented by the check which had been forwarded to him, and his relationship to other borrowers and the loan company prior or subsequent to this transaction was not material. The evidence shows that he was authorized to receive the proceeds of this loan and was made the agent of the borrower in this particular case. Therefore, whatever relationship he may have sustained to the loan company in previous or subsequent like transactions could have no bearing upon the issue to be determined by the jury in the instant case.

VIII. The instructions given by the court advised the jury as to the elements constituting the offense charged and the punishment prescribed therefor; that the charge is sustained if it was shown that the money was embezzled in one sum or in less amounts at different times; that want of assent to the appropriation of the money by the appellant may be shown either by direct and positive evidence or from all the facts and circumstances in the case; what facts must appear from the evidence to constitute the appellant the agent of the prosecuting witness; that the crime may be established either by direct or circumstantial evidence; that the criminal intent to deprive the owner of his property may be inferred when conversion is established. Other formal

*Instructions.*

instructions were given as follows: as to the presumption of innocence and reasonable doubt; the weight to be attached to appellant's testimony; that the jury is the judge of the credibility of witnesses; that if the prosecuting witness gave his consent for appellant to make personal use of the money in question a verdict of acquittal must be returned; that if it appears from the evidence that the appellant was the agent of the loan company and received the money conditionally, he must be acquitted; and that the mere failure to pay over the money to his principal does not constitute the crime charged. These instructions fully advised the jury as to all the principles of law arising under the evidence in this case and are in substantial compliance with similar ones which have heretofore met with the approval of this court. See cases cited in respondent's brief approving instructions similar in all their material particulars to those given in this case. These instructions rendered the giving of those asked by appellant and refused unnecessary.

There was ample evidence to sustain the verdict. Appellant was awarded a fair trial and has no just cause of complaint. We find no error authorizing a reversal and the judgment of the trial court is affirmed. All concur.