THE STATE v. R. LEE DAVIS, Appellant.

Division Two, December 20, 1926.

1. **EMBEZZLEMENT: Corpus Delicti: Premium on Bonds.** The fact that the president of a bank bought bonds of the par value of $17,000 for $16,452.22, and handed them to the cashier and directed him to charge them to the bank at their face value and they were thereafter carried on the

bank books at that value, and that the books balanced on the day the bonds were bought, is not proof that the president abstracted from the bank $547.78, where the cashier issued checks for $16,452.22 in payment of the bonds and the president handled none of the bank's money in the transaction. Such facts do not prove the **corpus delicti** under a charge of embezzlement, and a theory that because the books balanced the president embezzled the difference between the par value and the purchase price runs counter to the legal presumption of innocence.

2. **EMBEZZLEMENT: Corpus Delicti: Evidence of Other Acts.** Where the commission of the crime charged is proved, evidence of the commission of other similar offenses is admissible unless the act itself establishes intent; but where there is a failure to prove the **corpus delicti**, it is error to admit proof of other similar offenses committed by the accused for the purpose of bolstering up the charge against him. Further, if the nature of the offense charged is such that proof of its commission carries with it an implication or presumption of criminal intent, evidence of the commission of other similar offenses is inadmissible. Where defendant, the president of a bank, was charged with embezzling the difference between the par value of bonds and the amount paid for them, and the charge is not proved and the **corpus delicti** is not established, evidence that he was guilty of other embezzlements is not admissible, either for the purpose of throwing light upon his intent in the particular transaction, or for any other purpose; and particularly is such evidence hurtful, where it does not establish such other embezzlements, and it constitutes the major portion of the voluminous evidence offered and must have powerfully influenced the verdict of the jury, which was the evident purpose of its introduction.

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 949, p. 513, n. 62; Section 1133, p. 587, n. 1, 2, 3, 4; p. 588, n. 5, 6; Section 1136, p. 589, n. 13; Section 1137, p. 590, n. 20; Section 1159, p. 596, n. 58, 59. **Embezzlement**, 20 C. J., Section 1, p. 407, n. 1; Section 82, p. 486, n. 60; Section 85, p. 488, n. 71.

Appeal from Jackson Circuit Court.—*Hon. Nelson E. Johnson*, Judge.

REVERSED.

*H. E. Colvin, Clarence Wofford* and *Bert S. Kimbrell* for appellant.

(1) The court erred in refusing to instruct the jury at the close of all the evidence in the case to find the defendant not guilty: (a) There was no evidence that a crime had been committed. 1 Wharton's Criminal Evidence (10 Ed.) sec. 323-b, p. 630; State v. Bass, 251 Mo. 126; State v. Peck, 299 Mo. 454. (b) There was no evidence of the conversion of any money of the bank by Davis. State v. Britt, 278 Mo. 510; State v. Fowler, 265 Mo. 190; State v. Martin, 204 S. W. 537. (c) There was no evidence of criminal intent on the part of Davis. State v. Hurley, 19 A. L. R. 297. (d) If it be conceded that the embezzlement of money of the bank were shown by the evidence, such embezzlement might have been committed by any one of four persons who handled the money of the bank. (e) The evidence was

purely circumstantial and does not exclude every hypothesis except that of guilt. State v. Bowman, 294 Mo. 245, 266; State v. Staats, 296 Mo. 43; State v. Singleton, 294 Mo. 346; State v. Ruckman, 253 Mo. 487; State v. Gordon, 199 Mo. 561. (f) Surmise, suspicion, conjecture, or prejudice does not amount to substantial evidence. State v. Rutledge, 304 Mo. 32; State v. Tracy, 284 Mo. 619. (2) The court erred in admitting evidence of the alleged commission by appellant of other unproven acts of embezzlement. Such evidence was inadmissible for any purpose, and was extremely prejudicial. State v. Meininger, 306 Mo. 693; State v. Wilson, 223 Mo. 168; State v. Turley, 142 Mo. 411; Heinbach v. Heinbach, 274 Mo. 325; Post v. Bailey, 254 S. W. 74; Unrein v. Oklahoma Hide Co., 295 Mo. 374; State v. Bowman, 278 Mo. 498.

*North T. Gentry*, Attorney-General and *James A. Potter*, Assistant Attorney-General, for respondent.

(1) The evidence was entirely sufficient to carry the case to the jury. A demurrer to the State's evidence should be given only where there is no evidence of guilt, and in passing on a demurrer to the evidence the court must assume that the State's evidence is true. The weight of the evidence is for the jury. State v. Warner, 74 Mo. 83; State v. Mann, 217 S. W. 67; State v. Pollard, 174 Mo. 607; State v. Hughes, 258 Mo. 272; State v. Jackson, 283 Mo. 24; State v. Hascall, 284 Mo. 616. (2) The court did not err in admitting testimony tending to show the defendant guilty of other embezzlements. (a) The indictment contained a blanket charge to the effect that the defendant embezzled a gross sum of money from the bank. Under this charge it was proper for the State to prove any embezzlement which occurred within three years prior to the return of the indictment which amounted to the sum of thirty dollars. State v. Noland, 111 Mo. 473. (b) Evidence showing crime or attempt to commit crime of a character like the one charged is admissible in cases where the charge is obtaining property by false pretenses, embezzlement, forgery, uttering forged notes, and receiving stolen property. The ground on which the evidence is admitted is that it tends to show the intent with which the crime charged was committed or attempted. Such evidence is especially admissible where different inferences may be drawn regarding the intent with which the act was done and the circumstances of the act may be susceptible of an indication indicating innocence. State v. Patterson, 271 Mo. 109; State v. Young, 266 Mo. 735; State v. Wilson, 223 Mo. 169; State v. Wilcox, 179 S. W. 480; State v. Foley, 247 Mo. 635; State v. Meyers, 82 Mo. 562; State v. Sherman, 264 Mo. 374; State v. Roberts, 201 Mo. 727; State v. Cox, 264 Mo. 408; State v. Donaldson, 243 Mo. 475; State v. Spray, 174

Mo. 569; State v. Flynn, 124 Mo. 482; State v. Balch, 136 Mo. 109; Underhill Crim. Ev. (3 Ed.) sec. 447. (c) Evidence tending to prove the commission of a crime similar to the one for which defendant is being tried is generally admissible for the purpose of showing criminal intent, if it shows a course of conduct wherein the defendant embezzled a number of items or articles belonging to his employer. This is especially true where, as here, the act charged is susceptible of an innocent explanation, such as: accident, mistake or poor bookkeeping. State v. Fischer, 297 Mo. 174. (d) Evidence of other crimes is generally competent to prove the specific crime, if it shows motive, intent, absence of mistake or accident, common scheme or plan or identity of the person charged. State v. Lewis, 273 Mo. 518; State v. Bersch, 276 Mo. 397.

HIGBEE, C.—A grand jury of Jackson County, on July 24, 1923, returned an indictment in two counts, the first charging that the defendant, on or about October 18, 1922, stole $548.58 of the money of the American State Bank of Kansas City, Missouri; the second, that the defendant on that day embezzled that amount of the bank's money. On May 25, 1925, the case went to trial before a jury on a plea of not guilty. At the close of the evidence for the prosecution the charge of larceny was dismissed, and the jury returned a verdict finding the defendant guilty of embezzlement as charged in the indictment and assessed his punishment at five years' imprisonment in the penitentiary. On September 12, 1925, sentence was pronounced in accordance with the verdict and defendant appealed.

The bank was organized in 1917, and was closed by order of the Commissioner of Finance on April 30, 1923. The defendant Davis was president, C. A. Walker was vice-president and cashier, Miss Sage was assistant-cashier and Miss Farnum was bookkeeper of the bank during its continuance in business. They each received and paid out money for the bank, but Davis was out of his cage much of the time, attending to business that took him out of the bank.

In the view we take of the case a short statement will suffice. The evidence for the State shows that on October 18, 1922, Davis ordered from four dealers in bonds seventeen five per cent Swift & Co. bonds, each of the par value of $1000, with accrued interest. They were purchased at 96¾ of their par value, and at this figure their cost was $16,452.22. He turned them over to Mr. Walker, the cashier, with directions to charge them to the bank at $17,000. Accordingly this entry was made on the daily statement: "Corporation bonds, $17,000." They were carried on the books as assets of the bank valued at that figure. On the same day the cashier issued checks to the four dealers for the aggregate sum of $16,452.22 in payment of the bonds as shown by the books of the bank. The evidence does not show, nor

is it contended by the State, that in the transaction Davis handled a dollar of the bank's money. As showing the theory of the State, the prosecuting attorney in his opening statement to the jury, after stating that the evidence would be as above recited, said in substance that on the day on which the bonds were purchased for $16,450 odd dollars and charged to the bank at $17,000, the defendant was not long or short in his accounts with the bank. "The evidence will show," quoting the prosecutor's statement, "that in banking transactions the $548 must have appeared on the books that much in order for the books of the bank to have balanced. The evidence on the part of the State will show that on that day when the bank was charged $17,000 for the bonds and the bank only spent $16,452 for the bonds, that Mr. Davis's cash at the bank checked out in the proper balance or something near a proper balance, *tending to show the inevitable conclusion that at that time $548 was abstracted from the funds of the bank;* that the bank was charged with $17,000 and paid out $16,452."

This difference or discrepancy was first called to Davis's attention after the bank was closed April 30, 1923, by Miller and West, the bank examiners, and by Mr. Blackmar, attorney for the liquidating agent. Davis stated the difference would be found in the interest account. When that account was examined and it was not found there, he said it would be found in the exchange account, but it was not found there. At this point we quote, in substance, from the statement of the Attorney-General: "Over the objection of the defendant the State was permitted to introduce evidence of other embezzlements for the purpose of throwing light upon the intent of the defendant in the commission of the particular crime charged against him."

Among the bank's assets was a note of the defendant's wife for $10,000, bearing six per cent interest. There were thirty or thirty-one monthly payments of interest indorsed on this note, mostly in the defendant's handwriting, continuing down to the time the bank was closed. The State's witnesses, Miller, West and Blackmar, testified the bank's books did not show that the bank received these interest payments, and when this was called to defendant's attention he paid the principal of the note with all interest from its date.

The Associated Dollar Tires Company was the bank's customer. It sold tires at wholesale; it drew drafts on its customers, deposited these, with bills of lading attached, in the bank for collection, and also delivered to the bank a check for one per cent of the amount of each draft in payment for the bank's services in handling them. The State's witnesses testified the bank records failed to show that the bank ever received any part of these commissions, aggregating several hundred dollars, and there was evidence tending to show that Davis embezzled these commission checks.

Evidence was also introduced tending to prove another embezzlement, but it is not referred to in the Attorney-General's statement. All of the alleged embezzlements were denied by the defendant, but in our view of the case it is unnecessary to go into them.

The evidence further shows that, after the bank was closed, the liquidating agent collected on defendant's surety bond, on account of money claimed to have been embezzled by defendant while acting as president of the bank, the sum of $5,000. There was evidence that the payment was made by the surety company over the defendant's protest, as a matter of policy, to avoid being refused permission to continue doing business in the State.

The cross-examination of the bank examiners shows that for some time they had insisted that the directors of the bank should take up certain stale or worthless notes held by the bank; that at a conference on Sunday night, April 29th, the examiners delivered an ultimatum to the directors that this paper must be taken out before nine o'clock the following morning, otherwise the bank would be closed. Mr. Breidenthal, one of the directors, assured the examiners that as soon as a certain bank opened in the morning he would get and bring to the examiners $31,500 in Liberty bonds and take up the paper; that he came with the bonds to the bank at 9:08 A. M., but it had been closed at nine and a notice posted on the door that the bank was closed by order of the Commissioner of Finance.

There was proof, on the cross-examination of the State's witnesses, that within six months after the bank was closed the liquidating agent realized $428,000 from the assets of the bank, claims to the amount of $410,000 were proved, a dividend of ninety per cent was paid to the depositors, and fees were allowed and paid to the liquidating agent and his attorney each in the sum of $10,000.

Does the evidence establish the *corpus delicti?* The indictment is based on Section 3327, Revised Statutes 1919: "If any . . . officer, agent . . . of any incorporated company . . . shall embezzle or convert to his own use . . . any money, goods . . . belonging to any other person, which shall have come into his possession or under his care by virtue of his employment or office, he shall, upon conviction, be punished in the manner prescribed by law for stealing property."

"Embezzlement is the fraudulent conversion of another's property by one to whom it has been intrusted or into whose hands it has lawfully come." [State v. McWilliams, 267 Mo. 449, 184 S. W. 96.]

Davis, as president of the bank, ordered the bonds as an investment and they were delivered to Walker, the cashier, who, at Davis's direction, charged them to the bank at their face value, $17,000. They were carried on the books as assets at that value. So far as the evidence shows, this was a matter of bookkeeping and there is no evi-

dence that this was not the usual and customary manner of entering such transactions. The cashier issued checks for their payment. Davis did not handle a penny of the bank's money in these transactions. If he had taken $17,000 of the bank's money and gone out and bought the bonds at a discount and delivered them to the cashier with the statement that he had bought them at par, and had retained and converted to his own use the sum representing the discount, we would have a clear case of embezzlement under the statute.

It was directly proven by the State that Davis told the cashier to issue checks, not for $17,000, but for the sum at which Davis had purchased the bonds, and that checks were accordingly so issued. This appears from contemporaneous entries made by the cashier on the bank's books. This was equivalent to a statement that $16,452.22 was their purchase price. Neither Walker nor Davis could recall what was said by either of them at the time, although Walker testified with the entries in the books before him and as his memory was refreshed by these entries.

The theory of the State is, as shown by the italicized portion of the prosecutor's statement, that because the bank books balanced on the day the bonds were bought, the $547.78 was inevitably abstracted from the funds of the bank; *ergo*, Davis stole or embezzled the money. There is not a syllable of evidence in the record to support this hypothesis. It rests solely upon inference or speculation. Walker, the cashier, counted the cash and balanced the books at the close of the day's business, or had it done under his direction and supervision. If Davis stole or embezzled the money, knowing the circumstances as Walker did, it is inconceivable that he would not have discovered the discrepancy at the time. It is conceded that Davis did not keep the books or balance them. It is not shown that he knew anything about the discrepancy until after the bank was closed, or that he had reason to have suspected it. So far as the evidence shows everything he did was done openly and in the usual course of business. There is no evidence in the record that, if the bonds were bought at a discount and carried on the books at their face value, the difference between their face value and purchase price should not have appeared in the exchange or interest account. Vast sums of money are invested every day by banks and other corporations in securities which are bought at a premium or discount. Neither courts nor juries can take notice as to the manner of entering such transactions on corporation books. It is a matter of bookkeeping. Are these securities carried at their face value and the premium or discount shown in the interest or exchange account? The State's evidence is that Davis, when the matter was called to his attention, said that this should have been done in this instance. He was a practical banker and knew the custom in this respect. Walker knew whether or not this was the usual

method of bookkeeping and, though he was recalled as a witness several times by the State, he was not interrogated on this subject. In the absence of evidence to the contrary, it cannot be assumed that the suggestion of the defendant that the discrepancy should be found in one of these accounts was a circumstance which might be considered as tending to point to his guilt. However, the plausible theory of the prosecutor, that the inevitable conclusion must be that the money was abstracted, is a *non-sequitur;* it runs counter to the legal presumption of innocence. Moreover, there were four persons employed in the bank who received and paid out money. Of these four only Walker and Davis testified. But we need not discuss that phase of the case; the State failed to prove the *corpus delicti,* i. e., that the money was embezzled.

Evidence tending to prove that the defendant was guilty of other embezzlements was admitted, as the Attorney-General says, ''for the purpose of throwing light upon the intent of the defendant in the commission of the particular crime charged against him.'' This constituted the major portion of the evidence contained in the voluminous record and must have powerfully influenced the jury, as was evidently the purpose of the prosecution. Indeed, a reading of the record leads to the conclusion that it may have confused the jury as to the real charge on which the defendant was on trial.

In the luminous opinion in State v. Myers, 82 Mo. 563, Judge PHILIPS said:

''It is a general rule that a distinct crime, for which the party might be separately proceeded against, cannot be given in evidence against the prisoner on trial for a single offense. It rests upon the equitable and humane principle that it is unjust to raise a presumption of guilt against a prisoner, on the idea that having committed one offense the moral obliquity or depravity it exhibits makes it probable he would commit another. And as it is difficult to guard against the blunder of the average jury in failing to distinguish the real purpose for which such evidence is admitted, as against the bad impression it would likely make on them as to the prisoner's general character, it is contended that it would be safer to exclude it under all circumstances. But the rule has its exceptions, now too deeply and firmly settled not to recognize them. They are exceptions founded in as much wisdom and justice as the rule itself. The most generally recognized exception is to admit other similar acts for the purpose of proving guilty knowledge of the prisoner in cases of indictments for uttering, or having in his possession, false notes, bills of exchange, bank bills, instruments for forging the same and counterfeit coin, and recent possession of stolen property. [Citing cases.] The exception also extends to admitting other like acts as proof of the *scienter* in obtaining money under false pretenses, as in the instance

of falsely representing the bill of an insolvent bank to be good whereby the prisoner fraudulently obtained property. [Citing cases.] So on an indictment for knowingly delivering skimmed milk to a factory, to be manufactured into cheese, with intent to defraud, evidence of transactions of the same character, other than that named in the indictment, has been admitted for the purpose of showing guilty knowledge. [Citing cases.]"

Judge PHILIPS then quotes from an English case: "It seems clear on principle that when the *act charged is proved*, and the only remaining question is whether, at the time he did it he had guilty knowledge of the quality of his act, or acted under mistake, evidence of the class received must be admissible. It tends to show that he was pursuing a course of similar acts, and thereby raises a presumption that he was not acting under a mistake."

The Myers case was this: Myers went into a store, bought a nickel's worth of tobacco and offered a bill in payment. By a trick he attempted to cheat the clerk out of a nickel in making the change, and was detected. It was held proper to prove that on the same day, both before and after the act in question, in the same village, the defendant attempted the same trick on other clerks, as showing the *intent* with which the act under investigation was done. [P. 563.]

The Myers case has been followed in other cases. In State v. Hyde, 234 Mo. l. c. 231, it was said:

"In some cases such knowledge may be inferred from the act itself. For illustration, if one stabs another to the heart with a dagger, it will be presumed that he knew that the dagger would kill. But poison might be administered in a capsule by mistake or by inadvertence, under the belief that the capsule contained an innocent medicine. Hence, when the charge is murder by poison, it is competent for the State, in order to show criminal intent, which is a constitutive element of the crime, to prove knowledge, and to negative accident and mistake. For this purpose the State is permitted to show that on other occasions the defendant used the same means in the same way and with the same effect. If the defendant administered a poisoned capsule to Colonel Swope, the fact that on another occasion he administered similar capsules, with similar results, affords ground for an inference that he did so knowingly in each case."

And on page 233:

"But the evidence of the other acts relied upon must show them to be identical with the act in question, otherwise they have no probative value so far as the question of *mistake or accident* is concerned. On this point Underhill on Criminal Evidence, sec. 89, says: 'Suppose the question is, was a given act, either by the accused or by some other person, intentional or accidental? Here it is relevant

to prove that the person whose intention is in question had performed acts of a precisely similar nature before or after the act the intention of which is in question. And if it be found that he has performed many such acts, we have the best grounds for drawing the conclusion that the act, in the present instance, is intentional and not accidental.'

"The ground on which the evidence is admitted is that it tends to show the intent with which the crime charged was committed or attempted. Where the act constituting the crime speaks for itself as showing the intent, or where the criminal intent is presumed from the act itself, such evidence is not admissible; but where different inferences may be drawn regarding the intent with which the alleged criminal act was done and the circumstances of the act may be susceptible of an interpretation indicating innocence, then such evidence is admissible."

See State v. Patterson, 271 Mo. 110, 196 S. W. 3.

In 16 Corpus Juris, 587, it is said: "The admission of evidence which shows or tends to show the commission of other offenses by accused has been and should be carefully restricted. While there are several well-recognized exceptions to the rule excluding evidence of other offenses, and these exceptions are founded on as much wisdom and justice as the rule itself, the rule should be strictly enforced, and should not be departed from except under conditions which clearly justify such a departure." Where the commission of a *crime is proved,* and the "nature of the crime is such that guilty knowledge must be proved, evidence is admissible to prove that at another time and place not too remote, accused committed or attempted to commit a crime similar to that charged." [Ib. 589.] "On the other hand, where the nature of the offense is such that proof of its commission as charged carries with it an implication or presumption of criminal intent, evidence of the perpetration or attempted perpetration of other like offenses is inadmissible." [Ib. 590.]

As we have seen, the State failed to prove the *corpus delicti.* As held in the Myers case and in the citation, supra, where the commission of the crime charged is proved, under well recognized exceptions to the general rule, evidence of the commission of other similar offenses is admissible, but where, as here, there is a failure to prove the *corpus delicti,* it is error to admit proof of other similar offenses by the accused to bolster up the charge against the accused. Again, the nature of the offense charged in the indictment is such that proof of its commission carries with it an implication or presumption of criminal intent, and evidence of the commission of other similar offenses is inadmissible. The demurrer to the evidence should have

been sustained. The judgment is therefore reversed and the defendant discharged. *Railey, C.*, not sitting.

PER CURIAM:—The foregoing opinion by HIGBEE, C., is adopted as the opinion of the court. All of the judges concur.